RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0387P (6th Cir.)
File Name: 02a0387p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
　　　　*Plaintiff-Appellee,*

　　　　*v.*

DONALD A. WOLFE,
　　　　*Defendant-Appellant.*

No. 01-3128

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
Nos. 00-00078; 00-00162—George C. Smith,
District Judge.

Argued: September 12, 2002

Decided and Filed: November 7, 2002

Before: NORRIS and CLAY, Circuit Judges; O'MEARA,
District Judge.[*]

---

**COUNSEL**

**ARGUED:** David J. Graeff, Westerville, Ohio, for
Appellant. David J. Bosley, ASSISTANT UNITED STATES
ATTORNEY, Columbus, Ohio, for Appellee. **ON BRIEF:**

---

[*] The Honorable John Corbett O'Meara, United States District Judge
for the Eastern District of Michigan, sitting by designation.

1

David J. Graeff, Westerville, Ohio, for Appellant.  David J. Bosley, ASSISTANT UNITED STATES ATTORNEY, Columbus, Ohio, for Appellee.

———————

**OPINION**

———————

ALAN E. NORRIS, Circuit Judge.  Defendant Donald Wolfe pleaded guilty to a series of Ohio bank robberies.  On appeal, counsel raises the following issue related to the federal Sentencing Guidelines: Did the district court abuse its discretion when it departed upward by two levels because the multiple count adjustment, U.S.S.G. § 3D1.4, inadequately reflected the number of robberies committed by defendant?  We conclude that it did not and therefore affirm the judgment.

**I.**

During 1999 and 2000, defendant committed sixteen bank robberies throughout the state. As the result of his activities, he was the subject of two indictments: a four-count indictment in the Northern District of Ohio charged him with robbing four banks on different dates in violation of 18 U.S.C. § 2113(a); and a fourteen-count indictment in the Southern District of Ohio charged him with twelve bank robberies in that district.  The latter indictment also included two counts related to an unsuccessful attempt by defendant to escape from a magistrate judge's courtroom.

On October 26, 2000, defendant pleaded guilty to eight counts of the indictment returned in the Southern District: six bank robbery counts and the two counts related to his failed escape attempt.  Pursuant to Fed. R. Crim. P. 20, defendant also pleaded guilty to the four counts of the indictment returned in the Northern District.  The district court imposed a sentence of 108 months of imprisonment, three years of supervised release, a special assessment of $1,200, and ordered restitution in the amount of $42,870.

"six levels would only begin at 7 ½," *id.*, which means that at least one of the upward departure levels imposed by the district court in this case is countenanced by *Valentine*. More problematic is the second level.  Although defendant still has 2 ½ uncounted units after a one-level departure, *Valentine* underscores that § 3D1.4 "attaches decreasing marginal punishment to additional offenses." *Id.* at 1212.  Thus, more than 2 ½ additional levels might arguably be required to justify a second level. However, as both the district court and the government recognize, the Guidelines also allow sentencing courts to take counts that have been dismissed pursuant to plea agreements into consideration when assessing the actual seriousness of the offense. *See* U.S.S.G. § 5K2.21 (policy statement effective Nov. 1, 2000). Here, six bank robbery counts were dismissed pursuant to defendant's plea.  In our view, the fact that defendant had ten units for the purposes of § 3D1.4, coupled with his acknowledged guilt with respect to six dismissed counts, satisfies the "significantly more than five" test set forth in the Guidelines and explained in *Valentine*.

**III.**

The judgment is **affirmed.**

———————

level).

## II.

This court reviews decisions to depart from the Guidelines for abuse of discretion. *United States v. Valentine*, 100 F.3d 1209, 1210 (6th Cir. 1996); *United States v. Barajas-Nunez*, 91 F.3d 826, 831 (6th Cir. 1996).

Sentencing Guideline's Chapter 3, Part D explains how to calculate a base offense level when a defendant is convicted on multiple counts. Section 3D1.2 provides that "[a]ll counts involving substantially the same harm shall be grouped together into a single Group." The pre-sentence report concluded that there were eleven groups. When counts are grouped together, the highest offense level of the counts in the group is used. U.S.S.G. § 3D1.3(a). Section 3D1.4 then explains how to arrive at a combined offense level:

The combined offense level is determined by taking the offense level applicable to the Group with the highest offense level and increasing that offense level by the amount indicated in the following table:

| Number of Units | Increase in Offense Level |
| --- | --- |
| 1 | none |
| 1 1/2 | add 1 level |
| 2 | add 2 levels |
| 2 1/2 - 3 | add 3 levels |
| 3 1/2 - 5 | add 4 levels |
| More than 5 | add 5 levels. |

In determining the number of Units for purposes of this section:

(a) Count as one Unit the Group with the highest offense level. Count one additional Unit for each Group that is equally serious or from 1 to 4 levels less serious.

---

background language of § 3D1.4 that requires "significantly more than 5 Units" before an upward departure is warranted:

A careful examination of the chart gives us some evidence for interpreting what could be "significantly more than five." The lowest number of units that could be "more than five" is 5 1/2, but that number is already covered as the very first portion of the category that requires only a five-level increase. The chart is not specific after this point, except for the general sense, inherent in the word "significant," that the magnitude of the difference be more than the bare minimum.

The structure of this Guidelines provision, however, lends considerable support to our holding that, in this context, seven is not "significantly more than five." This provision provides for a progression from "groups of offenses" to "units" to "levels," the basic currency of the guideline scheme. Different offense groups (which can include one or several offenses) are assigned "units," ranging from 0 to 1/2 to 1. When we examine the table that is set out in the guidelines, we can see a general pattern that increasingly large numbers of units are required to justify each additional increase in offense level. . . .

*Valentine*, 100 F.3d at 1211. In *Valentine*, the court concluded that seven units did not constitute "significantly more than five" and vacated the sentence.

While *Valentine* reversed an upward departure, it does not support defendant's position because the underlying factual situations are distinguishable. Here, defendant had ten "units" for purposes of § 3D1.4.[1] *Valentine* itself states that

---

[1] Although he had eleven "count groups," one of them (Group 7) did not translate into a unit because it yielded an offense level of only 6, which is more than 9 levels less than the offense level of 20 that the ten other groups yielded. *See* U.S.S.G. § 3D1.4(c) (disregard groups that are more than 9 levels less serious than the group with the highest offense

(b) Count as one-half Unit any Group that is 5 to 8 levels less serious than the Group with the highest offense level.

(c) Disregard any Group that is 9 or more levels less serious than the Group with the highest offense level. Such Groups will not increase the applicable offense level but may provide a reason for sentencing at the higher end of the sentencing range for the applicable offense level.

U.S.S.G. § 3D1.4 (Nov. 2000). The Commentary that accompanies this section also includes the following background note:

Inasmuch as the maximum increase provided in the guideline is 5 levels, departure would be warranted in the unusual case where the additional offenses resulted in a total of significantly more than 5 Units.

In unusual circumstances, the approach adopted in this section could produce adjustments for the additional counts that are inadequate or excessive. . . . Ordinarily, the court will have latitude to impose added punishment by sentencing toward the upper end of the range authorized for the most serious offense. Situations in which there will be inadequate scope for ensuring appropriate additional punishment for the additional crimes are likely to be unusual and can be handled by departure from the guidelines. . . .

U.S.S.G. § 3D1.4, comment. (backg'd.) During sentencing, the district court gave the following explanation for its decision to depart upward by two levels:

The Court has departed the defendant's sentence upward two offense levels. Pursuant to United States Sentencing Guidelines 5K2.0, the Court may impose a sentence outside the range established by the applicable guidelines if the Court feels there exists an aggravating

or mitigating circumstance of a kind or to a degree not adequately taken into consideration by the Sentencing Commission in formulating the guidelines . . . .

The defendant entered a guilty plea to ten bank robberies. According to the multiple-count adjustment provision of 3D1.4, the defendant is limited to receiving a five-level enhancement for six or more robberies. Yet, Mr. Wolfe has committed four additional robberies to which he has pled, but have not been considered in the guideline groupings. The Court, therefore, orders an upward departure to capture these four additional robberies in the defendant's sentence not encountered under the guidelines grouping methods.

The Court also notes that the defendant has pled guilty to ten counts of bank robbery. However, there are six additional counts of bank robbery for which the defendant is responsible for sentencing purposes, even though these counts were dismissed as a part of the guilty plea. That makes a total, really, of what we are talking about here of 16 bank robberies. It is undisputed that the defendant is responsible for their commission and has agreed to pay restitution for them.

Pursuant to 1B1.3, the Court is permitted to use this relevant conduct to determine the defendant's sentence and upward departure, if necessary. In fact, the commentary to 1B1.4 states that: "For example, if the defendant committed two robberies, but as a part of the plea negotiation entered a guilty plea to only one, the robbery that was not taken into account by the guidelines . . . may provide a reason for sentencing above the guidelines range." Therefore, the Court orders an upward departure to capture these additional six robberies.

Defendant relies exclusively upon *United States v. Valentine, supra,* in support of his argument that the district court abused its discretion in departing. In *Valentine*, this court reversed an upward departure based upon the